UNITED STATES of America

v.

Harold ROSENTHAL a/k/a Allyn Milton Karr, George Rawls a/k/a Howard Kenith Leigh, Jorge Luis Valdes, Oscar Rivera Nunez, Orlando Rengel, Sixto Granados Enriquez, Avoro Martin, Norman Downs, Howard "Sonny" Hawkins, Ned Ames, James Patrick Herman, Roger E. Beckman, Brian J. Brinker, James Sever, William D. "Bill" McCain, Leonard Bonnell Steele, Fredrick Francis Haussman, James Albert Costello, Henry Newton Coley, III, James Conway Trammell.

Crim. No. 79-1-AMER.

United States District Court,
M. D. Georgia,
Americus Division.

Nov. 20, 1979.

D. L. Rampey, Jr., U. S. Atty., Richard Nettum, Asst. U. S. Atty., Macon, Ga., for the U. S.

D. L. Middlebrooks, Jr., Pensacola, Fla., for Rosenthal.

Edward T. M. Garland, Atlanta, Ga., for Rawls.

Judith H. Mizner, Joseph S. Oteri, James William Lawson, Martin G. Weinberg, Oteri & Weinberg, Boston, Mass., Shelby Highsmith, Highsmith & Strauss, Miami, Fla., Brayton S. Dasher, Macon, Ga., for Valdes.

William V. Hall, Jr., Decatur, Ga., for Coley.

Jeffrey S. Weiner, Alan S. Ross, Weiner, Robbins, Tunkey & Ross, Miami, Fla., for Nunez.

R. David Botts, Harper, Wiggins & Botts, Atlanta, Ga., for Hawkins.

Don Wolff, Paul J. Passanante, Wolff, Frankel & Passanante, Clayton, Mo., for Herman.

Daniel V. O'Brien, St. Louis, Mo., for Brinker.

Robert A. Ciuffa, Daniel V. O'Brien, St. Louis, Mo., for Sever.

Paul M. Storment, Jr. Ltd., Belleville, Ill., for McCain.

S. Skip Taylor, Miami, Fla., Charles A. Murphy, Southfield, Mich., for Steele.

Robert C. Stone, Hollywood, Fla., for Haussman.

Claude W. Hicks, Jr., Macon, Ga., for Trammell.

Walter L. Brady, Jr., Robert J. O'Hanlon, Lee, O'Hanlon & Brady, St. Louis, Mo., for Beckman.

Albert M. Horne, Atlanta, Ga., for Ames.

OWENS, District Judge:

The defendants [1] George Rawls and Jorge Valdes first challenge the procedure by which grand jurors are selected in this court on the ground that the procedures do not assure that each county or similar political subdivision is substantially proportionally represented in the master jury wheel for the district or division. 28 U.S.C.A. § 1863(b)(3). They also allege that blacks, women and persons between the ages of 18 and 29 years are under-represented on the master and qualified wheels and consequently the procedures do not assure jury venires selected at random from a fair cross section of the community as required by the Sixth Amendment of the United States Constitution and the Jury Selection and Service Act of 1968, as amended, 28 U.S. C.A. §§ 1861, et seq.

The defendants were indicted by a grand jury of 23 persons, 17 or 73.9 percent of whom were white, 6 or 26.1 percent of whom were black, 14 or 61 percent of whom were men, and 9 or 39 percent of whom were women, for conspiracy to import into the United States and to distribute marihuana, cocaine, and other drugs. The grand jury consisted of four jurors from the Albany Division, three from the Americus Division, two from the Athens Division, two from the Columbus Division, eight from the Macon Division, three from the Thomasville Division and one from the Valdosta Division. The jurors were selected from a venire of 45 persons of whom 33 or 73.3 percent were white, 12 or 26.7 percent were black, 22 or 48.9 percent were men, and 23 or 51.1 percent were women.

---

**1.** Several other defendants have adopted the motions herein disposed of, and this order includes all those defendants.

## A. THE SELECTION PROCESS

An insight into the methods of selecting grand and petit juries in this district is necessary to understand the issues involved. This district is composed of 70 of Georgia's 159 counties and is statutorily divided into seven divisions: Albany, Americus, Athens, Columbus, Macon, Thomasville and Valdosta. 28 U.S.C.A. § 90(b). Following the passage of the Jury Selection and Service Act of 1968, the active judges of this court adopted a plan for random jury selection (28 U.S.C.A. § 1863) and the plan and all amendments were approved by a Reviewing Panel comprised of judges of the Fifth Circuit Court of Appeals. A copy of the plan and amendments is attached hereto as Appendix I. The court, following the suggestion of Congress in 28 U.S.C.A. § 1863(b)(2), adopted the voter registration list of each county in the district as the source for prospective jurors and appointed the Clerk of the court as the supervisor of the plan.

As the plan operated in 1976 when the master and qualified jury wheels were constituted and as it presently operates according to its terms and the testimony of Clerk Walter F. Doyle, Sr. of this court, voter registration lists are obtained from each county every four years immediately following each presidential election. The present jury wheels were constituted after the November 1976 election. In order to obtain a sufficiently large master and qualified wheel, it was decided that the clerk would randomly select 2,500 names from each of the Albany, Americus, Athens, Thomasville, and Valdosta Divisions, and 5,000 names from each of the Columbus and Macon Divisons. These names were selected at random from the lists by use of a quotient obtained by dividing the total number of registered voters in the division by either 2,500 or 5,000. A starting number was selected at random from a range of numbers from one to the quotient numbers. Beginning with the starting number, the clerk or his designee counted down through the voter's list and designated each name

corresponding to the starting number and the quotient. For example, in the Albany Division where the quotient was 26 and the starting number 12, the clerk selected the twelfth name on each county registered voter list for the Albany Division and selected every twenty-sixth name on the list following the starting number. The names so selected became the Master Jury Wheel. The clerk obtained the address for each person, had the name and address encoded on a Bibb County, Georgia, computer; the computer addressed the Juror Qualification Questionnaire forms;[2] and the clerk mailed the forms to each person. The questionnaire sought responses which would either qualify, disqualify, exempt, excuse, or exclude prospective jurors. The Act provides exemptions for persons in active military service, for members of a fire or police department, and federal, state, or local public officers actively engaged in performance of their duties. 28 U.S.C.A. § 1863(b)(6). In addition the plan provides five classes of individuals who *may* be excused *if* they so desire:

(1) ministers and members of religious orders;

(2) practicing attorneys, physicians, dentists, and registered nurses;

(3) anyone who has served on a federal grand or petit jury within the past two years; and

(4) women who have legal custody of a child or children under the age of 10 years; and

(5) persons over 70 years of age at the time of completion of the form or at the time they are called for service.

The questionnaires were either completed and returned, never returned or returned undeliverable by the Postal Service. From the responses to the completed questionnaires, the clerk or his designee determined those who were either qualified or statutorily disqualified, exempt or excused from service. The names of those who were

---

**2.** The Questionnaire Form is a standard form which conforms to the Act and promulgated by the Administrative Office of the United States Courts and used by every federal district court. A copy of the questionnaire is attached hereto as Appendix 2.

qualified were encoded in the computer which printed out cards containing each person's name, address, occupation, age, sex, and race. These cards were placed in a box which became the Qualified Jury Wheel. It is from this wheel that grand and petit juries were and are being selected.

Under the plan grand juries are selected from the entire district. The plan provides that the clerk shall select a grand jury venire "by drawing a pro rata, or approximately pro rata, number of names at random from the qualified jury wheels of each division in the district." The clerk interpreted "pro rata" to mean that the number of names selected should be in proportion to the size of the master and qualified wheels so that the Macon and Columbus Divisions should have twice as many names in the grand jury venire as the other five divisions. The selection of the grand jury venires was conducted as follows: the qualified boxes from all seven divisions were gathered in open court and the clerk or his designee blindly drew one name each from the Albany, Americus, and Athens Divisions' boxes, two names from the Columbus and Macon Divisions, and one name each from the Thomasville and Valdosta Divisions so that nine names were selected. This process was done in rotation five times until 45 names were drawn—ten names each from Columbus and Macon and five names each from the other divisions. From this venire the first 23 names of those who had not been excused for hardship or removed because of death or other reasons were chosen by the court to serve as grand jurors.

Jurors for each division are selected randomly from the qualified box. The number of jurors for a particular venire is determined by the court and memorialized in an order to the clerk to draw that number of prospective jurors.

Beginning with the county registered voter lists the juror selection operates in a random and objective fashion. The defendants do not seriously question the random and objective operation of the plan nor have they presented evidence to show that any of the counties in this district discriminate against any group in voter registration or that any lists are presently unconstitutional or illegally drawn. The defendants rely solely on statistical disparity between the population of the district and divisions according to the 1970 census and the master and qualified wheels as drawn.

## B. DEFENDANTS' ATTACK ON GRAND JURY SELECTION PROCEDURE

■ The defendants contend that the manner in which the grand juries are drawn does not assure that each county is "substantially proportionally represented" on the grand jury venires. 28 U.S.C.A. § 1863(b)(3).[3] Defendants argue that some divisions and the counties encompassed in those divisions, are underrepresented and others overrepresented according to the number of registered voters in the division. This situation is significant because of alleged racial and sexual composition disparities among the divisions. As presently drawn five names are included from each of the Albany, Americus, Athens, Thomasville,

3. Title 28 U.S.C.A. § 1863(b)(3) provides:
(b) Among other things, such plan shall—
\* \* \* \* \* \*
(3) specify detailed procedures to be followed by the jury commission or clerk in selecting names from the sources specified in paragraph (2) of this subsection. These procedures shall be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes. They shall ensure that names of persons residing in each of the counties, parishes, or similar political subdivisions within the judicial district or

division are placed in a master jury wheel; and shall ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel for that judicial district, division, or combination or divisions. For the purposes of determining proportional representation in the master jury wheel, either the number of actual voters at the last general election in each county, parish, or similar political subdivision, or the number of registered voters if registration of voters is uniformly required throughout the district or division, may be used.

and Valdosta Divisions and ten (10) names each from the Columbus and Macon Divisions, in a 45 person grand jury venire. The defendants' evidence shows that if a 45 person grand jury was drawn in proportion to the number of registered voters in each division, the composition would be as follows:

| Division | Mathematically Proportionate Method | Current Method | (+) Overrepresentation (−) Underrepresentation |
|---|---|---|---|
| Albany | 5 | 5 | 0 |
| Americus | 4 | 5 | +1 |
| Athens | 7 | 5 | −2 |
| Columbus | 7 | 10 | +3 |
| Macon | 14 | 10 | −4 |
| Thomasville | 4 | 5 | +1 |
| Valdosta | 4 | 5 | +1 |
| | 45 | 45 | |

The court has found no case defining "substantially proportionally represented" in this context nor has counsel cited any. The court is convinced that while the current method is not mathematically perfect, it does assure substantially proportionate representation of each county in the grand jury venire. When a grand jury of 23 is selected from the list of 45 the disparities between the current method and the defendant's proportionate manner are reduced by approximately one-half. Therefore in the Macon Division where the discrepancy of four (4) is the largest, one would expect an underrepresentation of the Macon Division on a grand jury of only about 2 of 23 jurors. Athens would be underrepresented by only one juror of 23. Columbus would be overrepresented by only 1.5 jurors and Americus, Thomasville, and Valdosta overrepresented by only 0.5 jurors each of 23 grand jurors. The court concludes that these absolute disparities are not substantial and that the divisions are substantially proportionately represented in the grand jury venire.

The conclusion is supported by the case of *United States v. Test,* 550 F.2d 577 (10th Cir. 1978), where the defendants attacked the fact that two of the District of Colorado's divisions were underrepresented and that the third division was substantially overrepresented in the district's master jury wheel. The Tenth Circuit Court of Appeals held that:

. . . [m]ere geographical imbalance, absent evidence that an identifiable and cognizable segment of the community has been systematically excluded or under-represented by reason of such imbalance, does not violate the statutory and constitutional requirement that the jury panel represent a "fair cross section 'of the community' ".

*Id.* at 582 n. 4 (citations omitted). *See also United States v. Lane,* 574 F.2d 1019 (10th Cir. 1978). There is no showing that any identifiable or cognizable group has been substantially underrepresented by the slight geographical imbalance in this case. There is no showing that the registered voters of a particular division represent a cognizable and identifiable group whose interests are not represented in the grand jury venires. *Cf. United States v. Foxworth,* 599 F.2d 1 (1st Cir. 1979) (voters in various cities and towns allegedly excluded from Master Jury Wheel do not constitute a cognizable group).

## C. DEFENDANTS' ATTACK ON THE RACIAL AND SEXUAL COMPOSITION OF THE JURY WHEELS

The defendants Rawls and Valdes second avenue of attack is leveled at the statistical disparity in the racial, sexual, and age composition of the Master and Qualified Wheels as compared to the composition of these elements in the population of this district according to the 1970 census. The Act and

the Constitution require that grand and petit juries be "selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C.A. § 1861.

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community: (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87 (1979).

[Moreover] a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn . . . Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.

*Swain v. Alabama,* 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759, 766 (1965). The same principle applies to the Act, 1968 U.S.Code Cong. and Admin.News, pp. 1792, 1794, and to the selection of grand jurors.

■ There is no merit to the alleged age disparity because age groups do not constitute cognizable and identifiable groups under the Act or the Constitution. *United States v. Potter,* 552 F.2d 901 (9th Cir. 1977). Therefore, only the alleged underrepresentation of blacks and women is at issue. The defendants' evidence of racial and sexual disparity in grand and petit jury composition is set forth in Exhibits 6 and 7 to their motion to dismiss the indictment and for stay of proceedings due to improper selection of grand and petit jurors, attached hereto as Appendix 3 and 4.

■ This court is not inclined to evaluate the selection process solely in terms of statistical disparity. The court has found that the methods and procedures used in selecting the jury wheels were completely random and the criteria for qualifying, disqualifying, excusing, or exempting jurors were objectively applied. In virtually every case where a system of jury selection has been declared unconstitutional as violative of the fair cross section requirement the presence of a subjective selection process which offered at least the opportunity to discriminate was a major, if not determinative, factor in the decision. *See e. g. Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). The court has found no reported decisions, nor have the defendants cited any, where a federal district court jury selection plan adopted under the guidelines of the 1968 Act, has been found to violate the Act or the Constitution either facially or in its application. The fact that the plan operates randomly and objectively is sufficient to withstand the defendants' attack (*see Thompson v. Sheppard,* 490 F.2d 830 (5th Cir. 1974)); however, the court also believes that the alleged statistical disparities are well within statutory and constitutional tolerances.

The alleged statistical disparity between the proportion of blacks and women on the master and qualified lists and the proportion in the 1970 census for this district is not so great as to begin to make a prima facie case for the violation of the fair cross section requirement. The underrepresentation of non-whites or blacks on the qualified wheels ranges from 1.32 percent in the Columbus Division to 11.46 percent in the Americus Division and a district wide underrepresentation of 5.45 percent. Women are overrepresented in the Columbus Division by 6.51 percent and underrepresented at the greatest percentage in the Macon Division at 5.15 percent and a district wide underrepresentation of only 1.75 percent. Therefore, the absolute disparity for both blacks and women, in the absence of a subjective

selection process, falls within the limits established in the cases of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (Underrepresentation of blacks on jury list by 10–16 percent does not show purposeful discrimination), and *United States v. Goff,* 509 F.2d 825 (5th Cir.) *cert. denied* 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83 (1975) (underrepresentation of blacks by approximately 20 percent on list used to select grand jurors is not substantial underrepresentation).[4] The underrepresentation of blacks can be explained in large part by the fact that 8–11 percent fewer blacks are registered to vote than are whites nationwide according to Bureau of Census figures. *See* Appendix to *Foster v. Sparks,* 506 F.2d 805, 816 (5th Cir. 1975); census data cited in *Kairys, et al., Jury Representativeness : A Mandate for Multiple Source Lists,* 65 Cal. L.Rev. 776, 807 (1977). Neither the Act nor the Constitution require supplemental sources be added to voter lists simply because an identifiable group registers to vote in a proportion lower than the rest of the population. *United States v. Test,* 550 F.2d 577, 586 n. 8 (10th Cir. 1977); *United States v. Arlt,* 567 F.2d 1295 (5th Cir. 1978). The disparity of women can be attributed to the child care exemption which has been upheld. *United States v. Briggs,* 366 F.Supp. 1356 (N.D.Fla.1973).

Therefore the defendants have failed to establish a prima facie case of a violation of the fair cross section requirement.

## D. DEFENDANTS' MISCELLANEOUS ATTACKS

■ The one year residence requirement for jurors is not unconstitutional. *See e. g.*

*United States v. Perry,* 480 F.2d 147 (5th Cir. 1973). Nor does the fact that the clerk may have disqualified someone who had resided within the district for one year but who had moved to another location within the district within one year, require dismissal of the indictment. The small number of persons within this category is too insubstantial to possibly amount to a violation of the statute or constitution.

■ The child care exemption is not unconstitutional. *United States v. Briggs, supra* ; *United States v. Grey,* 355 F.2d 529 (W.D.Okl.1973). The fact that some persons who claimed the excuse were employed full-time in a job does not require dismissal of the indictment.

■ The fact that some who claimed the ministerial excuse also held full-time jobs does not require dismissal and reconstitution of the wheels. The number of these persons is also inconsequential and the dichotomy can be explained by the commonly known fact that some ministers do hold full-time jobs.

■ The court has reviewed the evidence on defendants' assertion that names included in the federal voting registrars list for Lee and Terrell Counties were not included in the county registered voter list for those counties. The court concludes that the discrepancies are accounted for by death, felony convictions, withdrawals from the registered voter lists and routine purges. The deletions to the county list for some innocuous reason were not reflected in the federal

---

4. Thus, under the plan, where blacks constitute 24.26 percent of the qualified wheels district wide, one would expect 5.6 blacks on a grand jury of 23. If the wheels represented exactly the proportion of blacks in the population of the district according to the 1970 census—29.7 percent—one would expect 6.8 blacks on the grand jury, a difference of only 1.2 persons in a grand jury of 23 persons. *See United States v. Goff, supra.* This is not substantial underrepresentation.

The defendants have offered into evidence the 1978 Annual Estimate of Population for the State of Georgia prepared by the Georgia Office of Planning and Budget. The document represents an estimate of the demographic profile of each of Georgia's counties including racial and sexual composition as of 1978. The estimate was prepared approximately two years after the present jury wheels were selected and is nothing more than its title expresses, an estimate. The court is not inclined to adopt it over the 1970 census. In any event the disparities between the jury wheels and the 1978 OMB estimate, though slightly greater than the disparities between the jury wheels and the 1970 census, are nevertheless within the tolerable limits established in *Swain* and *Goff.*

voting registrar's list. Though all the persons so removed were black, the court notes that virtually all persons on the federal voting registrar's list were black. The claimed discrepancy is without merit.

Accordingly, defendants' motion to dismiss the indictment and stay proceedings pending supplementation of the court's jury wheel is hereby DENIED.

## APPENDIX "1"

PLAN OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS

Pursuant to the Jury Selection and Service Act of 1968 (Public Law 90–274), the following plan is hereby adopted by this court, subject to approval by a reviewing panel and to such rules and regulations as may be adopted from time to time by the Judicial Conference of the United States.

### APPLICABILITY OF PLAN

This plan is applicable to the Middle District of Georgia which consists, by divisions, of the counties of:

(1) The Albany Division: Baker, Calhoun, Dougherty, Early, Miller, Mitchell, Turner and Worth.

(2) The Americus Division: Ben Hill, Crisp, Dooly, Lee, Macon, Schley, Sumter, Terrell, Webster and Wilcox.

(3) The Athens Division: Clarke, Elbert, Franklin, Greene, Hart, Madison, Morgan, Oconee, Oglethorpe and Walton.

(4) The Columbus Division: Chattahoochee, Clay, Harris, Marion, Muscogee, Quitman, Randolph, Stewart, Talbot and Taylor.

(5) The Macon Division: Baldwin, Bibb, Bleckley, Butts, Crawford, Hancock, Houston, Jasper, Jones, Lamar, Monroe, Peach, Pulaski, Putnam, Twiggs, Upson, Washington and Wilkinson.

(6) The Thomasville Division: Brooks, Colquitt, Decatur, Grady, Seminole and Thomas.

(7) The Valdosta Division: Berrien, Clinch, Cook, Echols, Irwin, Lanier, Lowndes and Tift.

The provisions of this plan apply to all divisions in the district.

### POLICY

This plan is adopted pursuant to and in recognition of the Congressional policy declared in Title 28 United States Code as follows:

"§ 1861 Declaration of Policy

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

"§ 1862 Discrimination prohibited

"No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status."

### MANAGEMENT AND SUPERVISION OF JURY SELECTION PROCESS

The Clerk of the court shall manage the jury selection process under the supervision and control of the Chief Judge of this district and there shall be no jury commission. The phrase "Chief Judge of this district" wherever used in this plan shall mean the Chief Judge of this district, or in his absence, disability or inability to act, the active District Court Judge who is present in the district and has been in service the greatest length of time. Wherever the Jury Selection and Service Act of 1968 requires or authorizes the plan to designate a district court judge to act instead of the Chief Judge, the above definition shall ap-

ply and such active District Court Judge above mentioned is hereby designated to act. The use of the word "Clerk" in this plan contemplates the Clerk and any or all of his Deputies.

## RANDOM SELECTION FROM VOTER LISTS AND MASTER JURY WHEELS

Voter registration lists represent a fair cross section of the community in each Division of the Middle District of Georgia. Accordingly, names of grand and petit jurors serving on or after the effective date of this plan shall be selected at random from the voter registration lists of all of the counties in the relevant division.

The Clerk shall maintain a master jury wheel or a master jury box, hereinafter referred to as master jury wheel, for each of the divisions within the district.

The Clerk shall make the random selection of names for the master jury wheels as follows. There shall be selected for the master jury wheel for each division as a minimum approximately the following number of names:

| | |
|---|---|
| Albany Division | 2,400 |
| Americus Division | 2,400 |
| Athens Division | 2,400 |
| Columbus Division | 5,000 |
| Macon Division | 5,000 |
| Thomasville Division | 2,400 |
| Valdosta Division | 2,400 |

These numbers are as large as they are to allow for the possibility that some juror qualification forms, hereinafter mentioned, will not be returned, that some prospective jurors may be exempt by law or excused, and that some may not comply with the statutory qualifications. The Chief Judge of this district may order additional names to be placed in the master jury wheels from time to time as necessary. If the above numbers are less than one-half of one percent of the total number of registered voters for the division the court concludes that such percentage number of names is unnecessary and cumbersome.

The Clerk shall ascertain the total number of registered voters for each division and divide that number by the number of names to be selected for the master jury wheel for that division. For instance, if there are 148,750 registered voters in the Macon Division, that number will be divided by 5,000 producing the quotient of 30. Then he shall draw by lot a number not less than 1 and not greater than 30 and that name shall be selected from the voter registration list of each county in that division along with each 30th name thereafter. Thus, if the starting number is 19, the 19th, 49th, 79th, 109th, 139th, etc. names shall be picked from the registration list of each county of that division.

Each master jury wheel shall be emptied and refilled between July 1 and October 31, 1971, and each fifth year thereafter.

This plan is based on the conclusion and judgment that the policy, purpose and intent of the Jury Selection and Service Act of 1968 will be fully accomplished and implemented by the use of voter registration lists, as supplemented by the inclusion of subsequent registrants to the latest practicable date, as the source of an at random selection of prospective grand and petit jurors who represent a fair cross-section of the community. This determination is supported by all the information this court has been able to obtain after diligent effort on its part and after full consultation with the Fifth Circuit Jury Working Committee and the Judicial Council of the Fifth Circuit. In order to assure the continuous implementation of the policy, purpose and intent of the Jury Selection and Service Act, a report will be made to the Reviewing Panel on or before March 1, 1969, showing a tabulation by race and sex of all prospective jurors, qualified and unqualified, based upon returns of Juror Qualification Forms from a mailing of such forms to 20% of the total number of persons placed in the Master Jury Wheel or 1,000 persons, whichever is greater.

## DRAWING OF NAMES FROM THE MASTER JURY WHEEL; COMPLETION OF JURY QUALIFICATION FORM

This plan hereby incorporates the provisions of 28 U.S.C.A. § 1864, which reads as follows:

"(a) From time to time as directed by the district court, the clerk or a district judge shall publicly draw at random from the master jury wheel the names of as many persons as may be required for jury service. The clerk . . . shall prepare an alphabetical list of the names drawn, . . .. The clerk . . . shall mail to every person whose name is drawn from the master wheel a juror qualification form accompanied by instructions to fill out and return the form, duly signed and sworn, to the clerk . . by mail within ten days. If the person is unable to fill out the form, another shall do it for him, and shall indicate that he has done so and the reason therefor. In any case in which it appears that there is an omission, ambiguity, or error in a form, the clerk . . . shall return the form with instructions to the person to make such additions or corrections as may be necessary and to return the form to the clerk . . . within ten days. Any person who fails to return a completed juror qualification form as instructed may be summoned by the clerk . . . forthwith to appear before the clerk . . to fill out a juror qualification form . . . .. At the time of his appearance for jury service, any person may be required to fill out another juror qualification form in the presence of . . . the clerk or the court, at which time, in such cases as it appears warranted, the person may be questioned, but only with regard to his responses to questions contained on the form. Any information thus acquired by the clerk . . . may be noted on the juror qualification form and transmitted to the chief judge or such district court judge as the plan may provide.

"(b) Any person summoned pursuant to subsection (a) of this section who fails to appear as directed shall be ordered by the district court forthwith to appear and show cause for his failure to comply with the summons. Any person who fails to appear pursuant to such order or who fails to show good cause for noncompliance with the summons may be fined not more than $100 or imprisoned not more than three days or both. Any person who willfully misrepresents a material fact on a juror qualification form for the purpose of avoiding or securing service as a juror may be fined not more than $100 or imprisoned not more than three days, or both."

## EXCUSES ON INDIVIDUAL REQUEST

This court finds and hereby states that jury service by members of the following occupational classes or groups of persons would entail undue hardship and extreme inconvenience to the members thereof, and serious obstruction and delay in the fair and impartial administration of justice, and that their excuse will not be inconsistent with the Act and may be claimed, if desired, and shall be granted by the court upon individual request: (1) all ministers of the gospel and members of religious orders actively so engaged; (2) all actively practicing attorneys, physicians and dentists, and registered nurses; (3) any person who has served as a grand or petit juror in a federal court during the past two years immediately preceding his call to serve; and (4) women who have legal custody of a child or children under the age of 10 years.

## EXEMPTION FROM JURY SERVICE

This court finds and hereby states that the exemption of the following occupational classes or groups of persons is in the public interest, not inconsistent with the Act, and shall be automatically granted: (1) members in active service of the armed forces of the United States; (2) members of the Fire or Police Departments of any State, District, Territory, Possession or subdivision thereof; (3) public officers in the executive, legislative, or judicial branches of the government of the United States, or any State, District, Territory, Possession or subdivision thereof who are actively engaged in the performance of official duties (public officer shall mean a person who is either elected to public office or who is An Officer directly appointed by a person elected to public office), and (4) all persons over 70

years of age at the time of executing the jury qualification form.

## DETERMINATION OF QUALIFICATIONS, EXCUSES, AND EXEMPTIONS

' This plan hereby incorporates the provisions of 28 U.S.C.A. § 1865, which reads as follows:

"(a) The chief judge of the district court, or such other district court judge as the plan may provide, on his initiative or upon the recommendation of the clerk . . . , shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for, or exempt, or to be excused from jury service. The clerk shall enter such determination in the space provided on the juror qualification form and the alphabetical list of names drawn from the master jury wheel. If a person did not appear in response to a summons, such fact shall be noted on said list.

"(b) In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, shall deem any person qualified to serve on grand and petit juries in the district court unless he—

"(1) is not a citizen of the United States twenty-one years old who has resided for a period of one year within the judicial district;

"(2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;

"(3) is unable to speak the English language;

"(4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or

"(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty."

## QUALIFIED JURY WHEEL

The Clerk shall also maintain separate qualified jury wheels or boxes, hereinafter referred to as qualified jury wheel, for each division in the district and shall place in such wheel the names of all persons drawn at random from the master jury wheels and not disqualified, exempt, or excused pursuant to this plan. Each qualification form as called for by section 1864, *supra*, shall bear the number which its addressee bears on the voter list. The Clerk shall insure that at all times at least 300 names are contained in each such qualified jury wheel. The qualified jury wheel in each division shall be emptied and refilled with names when the master jury wheel for that division is emptied and refilled.

## DRAWING OF AND ASSIGNMENT TO JURY PANELS

From time to time the court or the Clerk, if so ordered by the court, shall publicly draw at random from the qualified jury wheel or wheels such number of names of persons as may be required for assignment to grand or petit jury panels, and the Clerk shall prepare a separate list of names of persons assigned to each grand and petit jury panel. These names may be disclosed by the Clerk to parties and to the public after said list is prepared and the jurors have been summoned; provided, however, the court may at any time or from time to time order generally, or with respect to any particular term or terms of court, that these names be kept confidential in any case where in the court's judgment the interests of justice so require. (28 U.S.C.A. § 1863(b)(8), (9)).

## GRAND JURIES

Inasmuch as our grand juries function on a district-wide basis they shall be drawn by the court, or the Clerk if so ordered by the court, by drawing a pro rata, or approximately pro rata, number of names at random from the qualified jury wheels of each

division in the district and the names so drawn shall be pooled and shall constitute the grand jurors to report for duty.

Work toward implementing this plan shall begin as soon as practicable after its approval by a reviewing panel consisting of the members of the Judicial Council of the Fifth Circuit and the chief judge of this court, and all jury wheels now in use in this district shall be emptied and Master and Qualified jury wheels filled for each division as soon as practicable after such approval, and not later than the effective date of the Act, December 22, 1968, and this plan shall take effect with respect to each division as soon as Master and Qualified jury wheels for such division are filled.

SO ORDERED, this 25 day of July 1968.

/s/ W. A. Bootle
CHIEF JUDGE

/s/ J. Robert Elliott
UNITED STATES DISTRICT JUDGE

### CERTIFICATE

I hereby certify that the foregoing plan of the Middle District of Georgia for random jury selection has been submitted to the reviewing panel of the Fifth Judicial Circuit on July 25, 1968, and copies hereof have this date been transmitted by mail to the Attorney General of the United States and to the Administrative Office of the United States Courts, respectively.

This the 25th day of July, 1968.

/s/ W. A. Bootle
Chief Judge

### UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

The foregoing and attached plan of the United States District Court for the Middle District of Georgia for the random selection of grand and petit jurors in accordance with the Jury Selection and Service Act of 1968, having been reviewed by the Reviewing Panel of this Circuit is hereby approved.

Entered for the Reviewing Panel at Houston, Texas, this the 10th day of September, 1968.

/s/ JOHN R. BROWN,
CHIEF JUDGE

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*
John R. Brown
John Minor Wisdom
Walter P. Gewin
Griffin B. Bell
Homer Thornberry
James P. Coleman
Irving L. Goldberg
Robert A. Ainsworth
John C. Godbold
David W. Dyer
Bryan Simpson
Lewis R. Morgan

(b) *Chief District Judge*
/s/ W. A. BOOTLE
CHIEF DISTRICT JUDGE

### AMENDMENT TO "THE PLAN" OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS

### I

*Emptying and Refilling Jury Wheels*

As required by the Judicial Conference of the United States, the date for the initial emptying and refilling of the Master Jury Wheel appearing on Page 4 of said plan is changed from "between July 1 and October 31, 1971," to read "between July 1 and December 22, 1972," and the dates of subsequent emptying and refilling from "between July 1 and October 31, 1971, and each fifth year thereafter," to read "and every fourth year thereafter between July 1 and December 22."

The provision with respect to the emptying and refilling of the Qualified Jury

Wheel, as described in "The Plan" beginning on Page 7, is hereby amended to read as follows: "The Qualified Jury Wheel shall be emptied and refilled initially, pursuant to the procedure herein prescribed, after the Master Jury Wheel has been emptied and refilled but not later than December 22, 1972, and thereafter between July 1 and December 22 of every fourth year."

## II

### Periodic Reports

The reporting provision appearing in "The Plan" as the last sentence of Paragraph 2 on Page 4 commencing "In order to assure the continuous implementation . . . ." is stricken and the following is substituted therefor:

As required by the Judicial Conference of the United States, a report will be made to the Administrative Office of the United States Courts on September 1, 1971, and thereafter within six months after each periodic refilling of the Master Jury Wheel, on forms approved by the Judicial Conference, giving general data relating to the Master Jury Wheel, the time and manner of name selection, the source and number of names placed in the wheel and related information, an analysis of the race and sex of prospective jurors based on returns from *500* juror qualification forms drawn at random from the Master Jury Wheel, and an analysis by race, sex and occupation of all persons who have actually reported for jury service during the period covered by the report.

## III

### Numbers of Jurors for Master Wheel

The second sentence of Paragraph 2 on Page 3 of "The Plan" is amended to read, as follows:

There shall be selected for the Master Jury Wheel for each Division, as a minimum, approximately the following number of names:

| | |
|---|---|
| Albany Division | 1,400 |
| Americus Division | 1,200 |
| Athens Division | 1,200 |
| Columbus Division | 2,500 |
| Macon Division | 2,500 |
| Thomasville Division | 1,200 |
| Valdosta Division | 1,200 |

## IV

### The Following is Hereby Added to the Plan. Procedure in Excusing and Assigning Persons to Grand and Petit Juries

The names of those jurors who have been excused from a panel for hardship or extreme inconvenience reasons will be put back in the Qualified Jury Wheel where they will be subject to subsequent random selection. The Grand Jury Panel will be selected only from names drawn from the Qualified Jury Wheel on order of a District Judge. The names of those jurors excused from the Grand Jury for hardship or extreme inconvenience reasons will be placed back in the Qualified Jury Wheel.

When there is an excess of jurors present, either grand or petit, and their presence is required for only one day, the Court shall, in its discretion upon excusing the excess jurors, inform them that their names will be put back in the Qualified Jury Wheel, subject to subsequent random selection.

SO ORDERED, this 4th day of January, 1971.

/s/ W. A. Bootle 
Chief United States 
District Judge

/s/ J. Robert Elliott 
United States District Judge

## UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

On this day the Reviewing Panel of the United States Court of Appeals, Fifth Circuit, reviewed the plan for the random selection of grand and petit jurors as last modified and submitted by the United States District Court for the Middle District of Georgia.

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*

John R. Brown

John Minor Wisdom

Walter P. Gewin

Griffin B. Bell

Homer Thornberry

James P. Coleman

Irving L. Goldberg

Robert A. Ainsworth, Jr.

John C. Godbold

David W. Dyer

Bryan Simpson

Lewis R. Morgan

Charles Clark

Joe Ingraham

Paul H. Roney

(b) *Chief District Judge*

W. A. Bootle

The attached amendment to the plan for the random selection of grand and petit jurors of the United States District Court for the Middle District of Georgia having been fully reviewed by the Reviewing Panel of this Circuit, the same is hereby approved. Chief Judge W. A. Bootle is directed to file a copy of said amended plan in the Administrative Office of the United States Courts, in the Office of the Attorney General of the United States and in the Office of the Clerk of this Court with a copy of this order of approval attached.

Chief Judge John R. Brown and Chief District Judge W. A. Bootle are authorized and directed to execute this order of approval on behalf of the Reviewing Panel.

Entered for the Reviewing Panel at Houston, Texas, This the 19 day of February, 1971.

/s/ JOHN R. BROWN, CHIEF JUDGE

/s/ W. A. BOOTLE
CHIEF DISTRICT JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

SECOND AMENDMENT TO "THE PLAN" OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS

The plan heretofore adopted by this Court for the random selection of grand and petit jurors pursuant to the Jury Selection and Service Act of 1968, Title 28, United States Code, § 1861, et seq. (Public Law 90–274), approved by the Judicial Council of the United States Court of Appeals for the Fifth Circuit on September 10, 1968, and filed on September 11, 1968, and the amendment to said plan approved by said Judicial Council on February 19, 1971, and filed on February 23, 1971, are, subject to the approval of the Reviewing Panel for the Fifth Circuit, further amended in the following respects, so as to incorporate the revisions required by Public Law 92–269, April 6, 1972.

*Determination of Qualifications,
Excuses and Exemptions*

The provision with respect to the determination of qualifications, excuses and exemptions, which incorporates the provisions of Title 28, United States Code, § 1865(b)(1), as described in "The Plan" beginning on Page 7, is amended by striking out the words "twenty-one years" and inserting in lieu thereof the words "eighteen years".

*Emptying and Refilling Jury Wheels*

The provision with respect to the initial and subsequent emptying and refilling of the Master Jury Wheel and the Qualified Jury Wheel, as described in the "Amendment to The Plan" beginning on Page 1, is stricken and the following is substituted therefor:

The Master Jury Wheel shall be emptied and refilled initially between November 7, 1972, and September 1, 1973, and thereafter every four years between the date of the November general election and the following September 1st. The Qualified Jury

Wheel shall be emptied and refilled initially after the Master Jury Wheel has been emptied and refilled but not later than September 1, 1973, and thereafter every four years between the date of the November general election and the following September 1st.

SO ORDERED this 22nd day of August, 1972.

/s/ J. Robert Elliott
Chief United States
District Judge

/s/ Wilbur D. Owens, Jr.
United States District Judge

## UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

The foregoing and attached Second Amendment to the Jury Plan for the Middle District of Georgia for the random selection of grand and petit jurors in accordance with the Jury Selection and Service Act of 1968, having been reviewed by the Reviewing Panel of this Circuit, is hereby approved.

Entered for the Reviewing Panel at Houston, Texas, this the 7 day of September, 1972.

/s/ John R. Brown, Chief Judge

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*
John R. Brown
John Minor Wisdom
Walter P. Gewin
Griffin B. Bell
Homer Thornberry
James P. Coleman
Irving L. Goldberg
Robert A. Ainsworth, Jr.
John C. Godbold
David W. Dyer
Bryan Simpson
Lewis R. Morgan
Charles Clark
Joe Ingraham
Paul H. Roney

(b) United States District Judge
/s/ J. Robert Elliott,
Chief Judge
United States District Court
Middle District of Georgia

## UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

On this day the Reviewing Panel of the United States Court of Appeals, Fifth Circuit, reviewed the Amended Plan for the random selection of grand and petit jurors as last modified and submitted by the United States District Court for the Middle District of Georgia.

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*
John R. Brown, Chief Judge
John Minor Wisdom
Walter P. Gewin
Griffin B. Bell
Homer Thornberry
James P. Coleman
Irving L. Goldberg
Robert A. Ainsworth, Jr.
John C. Godbold
David W. Dyer
Bryan Simpson
Lewis R. Morgan
Charles Clark
Joe Ingraham
Paul H. Roney

(b) *United States District Judge*
J. Robert Elliott, Chief Judge

The attached Second Amendment to the Plan for the random selection of grand and petit jurors of the United States District Court for the Middle District of Georgia, having been fully reviewed by the Reviewing Panel of this Circuit, the same is hereby approved. Judge J. Robert Elliott is directed to file a copy of said Amended Plan in the Administrative Office of the United States Courts, in the Office of the Attorney

General of the United States, and in the Office of the Clerk of this Court, with a copy of this Order of Approval attached.

Chief Judge John R. Brown and Chief District Judge J. Robert Elliott are authorized and directed to execute this Order of Approval on behalf of the Reviewing Panel.

Entered for the Reviewing Panel at Houston, Texas, this the 7 day of September, 1972.

/s/ John R. Brown,
Chief Judge,
United States Court
of Appeals,
Fifth Circuit

/s/ J. Robert Elliott,
Chief Judge,
United States District Court,
Middle District of Georgia

I hereby certify that this Second Amendment to the Jury Plan of the Middle District of Georgia for random jury selection has been submitted to the Reviewing Panel of the Fifth Judicial Circuit and copies hereof have this date been transmitted by mail to the Attorney General of the United States and to the Administrative Office of the United States Courts, respectively.

This the 27 day of September, 1972.

/s/ J. Robert Elliott,
Chief Judge,
United States District Court
Middle District of Georgia

THIRD AMENDMENT TO "THE PLAN" OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS

The plan heretofore adopted by this Court for the random selection of grand and petit jurors pursuant to the Jury Selection and Service Act of 1968, Title 28, United States Code, § 1861, et seq., approved by the Judicial Council of the United States Court of Appeals for the Fifth Circuit on September 10, 1968, as amended with the approval of said Judicial Council on February 19, 1971, and as amended with the approval of said Judicial Council on September 7, 1972, is, subject to the approval of the Reviewing Panel for the Fifth Circuit, further amended in the following respects:

The following phrase which appears under the paragraph headed "Exemption From Jury Service", on page 6 of the plan, is deleted from the plan:

"and (4) all persons over 70 years of age at the time of executing the juror qualification questionnaire form."

The following phrase is added at the end of the paragraph headed "Excuses on Individual Request", on page 6 of the plan:

"and (5) all persons over 70 years of age at the time of completion of the juror qualification questionnaire form or at the time of being called to serve."

SO ORDERED this 31st day of May, 1973.

/s/ J. Robert Elliott
CHIEF UNITED STATES DISTRICT JUDGE

/s/ Wilbur D. Owens, Jr.
UNITED STATES DISTRICT JUDGE

UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

The foregoing and attached Amendment to the Plan of the United States District Court for the Middle District of Georgia for the Random Selection of Grand and Petit Jurors having been reviewed by the Reviewing Panel of this Circuit is hereby certified as APPROVED.

Entered for the Reviewing Panel at New Orleans, Louisiana, this 17th day of August, 1973.

/s/ Thomas H. Reese,
Circuit Executive
For The Judicial Council,
Fifth Circuit

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*

John R. Brown

John Minor Wisdom

Walter P. Gewin

Griffin B. Bell

Homer Thornberry

James P. Coleman

Irving L. Goldberg

Robert A. Ainsworth, Jr.

John C. Godbold

David W. Dyer

Bryan Simpson

Lewis R. Morgan

Charles Clark

Paul H. Roney

Thomas G. Gee

(b) *United States District Judge*

/s/ J. Robert Elliott
Chief Judge
Middle District of Georgia

FOURTH AMENDMENT TO "THE PLAN" OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS.

The plan heretofore adopted by this Court for the random selection of grand and petit jurors pursuant to the Jury Selection and Service Act of 1968, Title 28, United States Code, § 1861, et seq., approved by the Judicial Council of the United States Court of Appeals for the Fifth Circuit on September 10, 1968, as amended with the approval of said Judicial Council on February 19, 1971, as amended with the approval of said Judicial Council on September 7, 1972, and as amended with the approval of said Judicial Council on August 17, 1973, is, subject to the approval of the Reviewing Panel for the Fifth Circuit, further amended in the following respects:

*Number of Jurors for Master Wheel*

Section III, on page 2, of the First Amendment to "The Plan" is amended to read as follows:

There shall be selected for the Master Jury Wheel for each Division, as a minimum, approximately the following number of names:

| | |
|---|---|
| Albany Division | 2,500 |
| Americus Division | 2,500 |
| Athens Division | 2,500 |
| Columbus Division | 5,000 |
| Macon Division | 5,000 |
| Thomasville Division | 2,500 |
| Valdosta Division | 2,500 |

SO ORDERED, this 6 day of August, 1976.

/s/ J. Robert Elliott
Chief United States
District Judge

/s/ Wilbur D. Owens, Jr.
United States District Judge

UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

The foregoing and attached Amendment to the Plan of the United States District Court for the Middle District of Georgia for the Random Selection of Grand and Petit Jurors having been reviewed by the Reviewing Panel of this Circuit is hereby certified as APPROVED.

Entered for the Reviewing Panel at New Orleans, Louisiana, this 8th day of September, 1976.

/s/ Thomas H. Reese,
Circuit Executive,
For the Judicial Council
Fifth Circuit

The following Judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*

John R. Brown

John Minor Wisdom

Walter P. Gewin

Homer Thornberry—absent due to illness

James P. Coleman

Irving L. Goldberg

Robert A. Ainsworth, Jr.

John C. Godbold
David W. Dyer
Lewis R. Morgan
Charles Clark
Paul H. Roney
Thomas G. Gee
Gerald B. Tjoflat
James C. Hill

(b) *United States District Judge*

/s/ J. Robert Elliott
Chief Judge
Middle District of Georgia

### FIFTH AMENDMENT TO "THE PLAN" OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, ALL DIVISIONS, FOR THE RANDOM SELECTION OF GRAND AND PETIT JURORS

The plan heretofore adopted by this Court for the random selection of grand and petit jurors pursuant to the Jury Selection and Service Act of 1968, Title 28, United States Code, & 1861, et seq., approved by the Judicial Council of the United States Court of Appeals for the Fifth Circuit on September 10, 1968, as amended with the approval of said Judicial Council on February 19, 1971, as amended with the approval of said Judicial Council on September 7, 1972, as amended with the approval of said Judicial Council on August 17, 1973, and as amended with the approval of said Judicial Council on September 8, 1976, is, subject to the approval of the Reviewing Panel for the Fifth Circuit, further amended in the following respects:

*Use of electronic data processing methods for jury administration*

The court finds that electronic data processing methods can be advantageously used for selecting and copying names from the voter registration lists of those larger counties that maintain these lists in machine readable forms such as punched cards, magnetic tapes, or magnetic discs. It is further found that in smaller counties currently maintaining their voter lists in hand-written or printed form it may be advantageous to employ a combination of methods whereby names are initially selected from the voter list manually and then recorded in punched cards, tapes or discs for subsequent handling and copying of these names by electronic machine methods.

Therefore, a properly programmed electronic data processing system or a combination system employing both manual and electronic machine methods may, at the Clerk's option and after consultation with the Chief Judge, be used to select names for the master wheel from voter registration lists, or lists of actual voters, of any or all counties in the District, provided that the required proportions of names from each county are maintained.

Similarly, an electronic data processing system or a combination electronic and manual system may, at the option of the Clerk and the Chief Judge, be used to select names from the master wheel, from the qualified wheel for summoning persons to serve as grand or petit jurors, and for the creation of any papers and records needed by the court to administer the recruitment, selection, and payment of jurors.

If the court elects to use electronic machine methods or a combination of manual and machine methods, in connection with any or all of the district's voter records, master jury wheels, or qualified jury wheels, the name selection system shall be planned and programmed according to a "starting number" and "quotient" formula. This formula will insure that any group of names chosen will represent all segments of source files from which names are drawn and that the mathematical odds of any single name being picked are substantially equal.

The *"quotient"* is simply the number of names in the source list(s), or wheel, divided by the number of names wanted in any one drawing (in other words, it is the increment of names passed for each name taken). For example, if there are 200,000 names on county voter list(s), and questionnaires are to be sent to 4000 of these names to establish the master wheel, the "quotient" for

this drawing would be 50 (i. e. 200,000 ÷ 4000 = 50). Or, if there are 2000 names in the qualified wheel and the Court wishes to summon 100 jurors, the "quotient" for this drawing would be 20 (i. e. 2000 ÷ 100 = 20).

The *"starting number"* is a number drawn by lot from a drum or box containing consecutively numbered cards covering the same range of numbers as the "quotient". For example, in the qualified wheel drawing mentioned above, the Clerk would place consecutively numbered cards from one to twenty in a drum or box and draw one number. If the randomly picked number was "5", the computer would be programmed to pick the 5th name in the wheel first and then take every 20th name thereafter—i. e. the 25th, the 45th, etc.

Randomly drawing a "starting number" by lot accomplishes three objectives:

—it establishes the location on the voter name list(s), or wheel, from which the first name is taken;

—it removes the possibility of human discretion or choice in selection of any individual's name (making individual name selections unpredictable and unpredeterminable), and

—it insures that, at the outset of the drawing, mathematical odds of being picked are substantially equal for all names in the source from which drawn.

*Public announcement of the place and time when automated drawing of names will be made*

Random drawings of starting numbers shall be publicly made in the office of the Clerk of the Court at times to be announced in a public place such as the court bulletin board.

The office of the Clerk of the Court shall retain and, when requested, provide public access to the following documents:

—the courts "Juror Selection Plan", including a verbatim description of the method used in determining the "quotient" and "starting number",

—a verbal or graphically charted description of the procedure employed in the automated selection system, and

—a copy of the Court's authorization and instruction order to the person or computer service organization which carries out automated name selection tasks for the court.

SO ORDERED, this 8 day of November, 1976.

/s/ J. Robert Elliott
Chief United States
District Judge

/s/ Wilbur D. Owens, Jr.
United States District Judge

### UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT REVIEWING PANEL, JURY PLAN

The foregoing and attached Amendment to the Jury Selection Plan of the United States District Court for the Middle District of Georgia for the Random Selection of Grand and Petit Jurors, Fifth Amendment, having been reviewed by the Reviewing Panel of this Circuit is hereby certified as APPROVED.

Entered for the Reviewing Panel at New Orleans, Louisiana, this 23rd day of December, 1976.

Thomas H. Reese,
Circuit Executive
For the Judicial Council,
Fifth Circuit

The following judges comprised and acted as the Reviewing Panel:

(a) *Fifth Circuit Judicial Council*
John R. Brown
John Minor Wisdom
Homer Thornberry
James P. Coleman
Irving L. Goldberg
Robert A. Ainsworth, Jr.
John C. Godbold
Lewis R. Morgan
Charles Clark
Paul H. Roney
Thomas Gibbs Gee

Gerald Bard Tjoflat
James C. Hill
Peter T. Fay

(b) *United States District Judge*

/s/ J. Robert Elliott, Chief Judge
Middle District of Georgia

APPENDIX "2"

## FEDERAL COURT — JUROR QUALIFICATION QUESTIONNAIRE — AO-178(1/77)

**PLEASE READ LETTER ON OTHER SIDE • PRINT OR TYPE YOUR ANSWERS**

① IF YOUR NAME AND PERMANENT ADDRESS ARE NOT CORRECT, PLEASE CHECK ☐ AND SHOW CORRECTIONS ON REVERSE SIDE

TO

② RETURN THIS FORM IN THE ENCLOSED ENVELOPE TO
UNITED STATES DISTRICT COURT
MR. WALTER F. DOYLE
CLERK, U. S. DISTRICT COURT
P. O. BOX 128
MACON, GEORGIA 31202

③ COUNTY YOU NOW LIVE IN ⟶

④ HAVE YOU LIVED FOR THE FULL YEAR IN
• THIS STATE ☐ YES ☐ NO
• THE SAME COUNTY ☐ YES ☐ NO

IF "NO" GIVE NAMES OF OTHER COUNTIES OR STATES IN WHICH YOU LIVED DURING THE YEAR, AND SHOW DATES. (USE REVERSE IF NECESSARY.)

⑤ HOME
PHONE
WORK

### A. IDENTIFICATION

⑥ BIRTH DATE { month | day | year }
⑦ AGE
⑧ U S CITIZEN ☐ YES ☐ NO
⑨ MR ☐ MRS. ☐ MISS ☐
⑩ ☐ MARRIED ☐ SINGLE ☐ WIDOWED ☐ DIVORCED/SEPARATED

⑪ PLEASE INDICATE YOUR RACE ON THE FOLLOWING LIST

FEDERAL LAW REQUIRES YOU AS A PROSPECTIVE JUROR TO INDICATE YOUR RACE. THIS ANSWER IS REQUIRED SOLELY TO AVOID DISCRIMINATION IN JUROR SELECTION AND HAS ABSOLUTELY NO BEARING ON QUALIFICATIONS FOR JURY SERVICE. BY ANSWERING THIS QUESTION YOU HELP THE FEDERAL COURT CHECK AND OBSERVE THE JUROR SELECTION PROCESS SO THAT DISCRIMINATION CANNOT OCCUR. IN THIS WAY THE FEDERAL COURTS CAN FULFILL THE POLICY OF THE UNITED STATES WHICH IS TO PROVIDE JURORS WHO ARE RANDOMLY SELECTED FROM A FAIR CROSS SECTION OF THE COMMUNITY

☐ INDIAN (American)
☐ ORIENTAL
☐ BLACK (or Negro)
☐ WHITE
☐ OTHER (Specify)

### B. OCCUPATION

Federal Law requires that you answer No. 12, 13, 14, & 15 so that the Federal Courts may determine promptly whether you fall within an excuse or exemption category (See "E & "F").

⑫ ARE YOU NOW EMPLOYED? ☐ YES ☐ NO

⑬ YOUR EMPLOYER'S NAME

⑭ YOUR USUAL OCCUPATION, TRADE OR BUSINESS

⑮ BUSINESS ADDRESS OR EMPLOYER'S ADDRESS

Street

City State

### C. EDUCATION AND HEALTH

⑯ CAN YOU ..
• READ ☐ YES ☐ NO
• WRITE ☐ YES ☐ NO
• SPEAK AND UNDERSTAND ☐ YES ☐ NO
THE ENGLISH LANGUAGE?

⑰ SHOW THE EXTENT OF YOUR EDUCATION BY GIVING THE NUMBER OF FULL YEARS COMPLETED { In Grade School | In High School | Trade/Vocational School | Above High School }

⑱ DO YOU HAVE ANY PHYSICAL OR MENTAL INFIRMITY ☐ YES ☐ NO IMPAIRING YOUR CAPACITY TO SERVE AS JUROR?

IF "YES" PLEASE EXPLAIN (& attach evidence of your infirmity)

### D. CRIMINAL RECORD

⑲ WERE YOU EVER CONVICTED OF A STATE OR FEDERAL CRIME PUNISHABLE BY IMPRISONMENT FOR MORE THAN ONE YEAR? ☐ YES ☐ NO

⑳ WERE YOUR CIVIL RIGHTS RESTORED? ☐ YES ☐ NO

㉑ ARE ANY CHARGES PENDING AGAINST YOU FOR VIOLATION OF A STATE OR FEDERAL CRIME PUNISHABLE BY IMPRISONMENT FOR MORE THAN ONE YEAR? ☐ YES ☐ NO

### E. EXEMPTIONS

㉓ CHECK IF YOU ARE EMPLOYED ON A FULL-TIME BASIS AS ONE OF THESE
☐ PUBLIC OFFICIAL OF THE UNITED STATES, STATE, OR LOCAL GOVERNMENT WHO IS EITHER ELECTED TO PUBLIC OFFICE OR DIRECTLY APPOINTED BY ONE ELECTED TO OFFICE.
☐ MEMBER OF ANY GOVERNMENTAL POLICE OR REGULAR FIRE DEPT (NOT INCLUDING VOLUNTEER OR COMMERCIAL DEPTS )
☐ MEMBER IN ACTIVE SERVICE OF THE ARMED FORCES OF THE UNITED STATES

### F. GROUNDS FOR REQUESTING EXCUSE

You MAY be excused by the court from service as a juror if you are within a category shown below if you request to be excused for that reason, mark the category which applies to you. HOWEVER IF YOU WISH TO SERVE DO NOT MARK YOUR CATEGORY

I am
1) ___ Over 70 years of age
2) ___ An actively engaged minister of religion or member of a religious order
3) ___ An actively practicing attorney, medical doctor, dentist, or registered nurse
4) ___ A person who has legal custody and care of a child or children under 10 years of age.
5) ___ A person who has served as a grand or petit juror in state or federal court within the past 2 years.

APPENDIX "2"

### REMEMBER, ALL CITIZENS HAVE AN OBLIGATION TO SERVE AS JURORS WHEN CALLED UPON

I SWEAR AND AFFIRM THAT ALL ANSWERS ARE TRUE TO THE BEST OF MY KNOWLEDGE & BELIEF

SIGN HERE ▶ _____ DATE SIGNED _____
YOU MUST ANSWER ALL QUESTIONS THAT APPLY TO YOU PLEASE MAKE SURE YOU HAVE DONE SO

If another person filled out the above form, please indicate your name, address and reason why on other side of form

# UNITED STATES DISTRICT COURT

> PLEASE NOTE: Unless shown elsewhere, the address of the U.S. Court which sent you this questionnaire is shown on reverse side at box 2.

Dear Prospective Juror:

Your name has been drawn by lot, and you are being considered for jury service in the United States District Court. Trial by jury is a keystone of our system of justice. Jury service is therefore both an opportunity and an obligation of every American. Jurors will receive mileage and, unless they are Federal Government employees, $20.00 ( ) per day for each day of service.

This is not a summons for jury service. It is a way of obtaining some information about you from which we can objectively determine whether you are qualified to serve pursuant to federal law. Please answer each question, sign and return the form within ten days. If we find you qualified, you may be summoned at a later date.

If you are unable to fill out this form, someone else may do it for you provided that person indicates below why it was necessary for him to do it instead of you.

If you do not return this questionnaire form, fully completed, within ten days you are liable to be summoned to report at your expense for completion of the questionnaire at this office.

There are certain grounds for excuse or exemption from jury service. If you are exempt or claim a right to be excused, give us that information under sections E and F. If you show under Section C that you have a physical or mental infirmity, please attach evidence of your infirmity. Do not ask to be excused by telephone.

**If your address changes after you have returned this questionnaire, please notify us promptly by letter or post card, addressing It to "Attention: Jury Clerk"**

CLERK,
UNITED STATES DISTRICT COURT

Additional space for completion of answers from questionnaire. Indicate number of question(s) to which you are further responding:

SPACE FOR OFFICIAL USE ONLY

| DISQUALIFIED | EXEMPT | EXCUSED | EXCLUDED | QUALIFIED |
|---|---|---|---|---|

7-76

APPENDIX "3"

EXHIBIT 6
COMPOSITION AND DISPARITIES -- GRAND JURY COMPOSITE FOR DISTRICT

| Category | Census | RETURNED QUESTIONNAIRES | | | | | QUALIFIED WHEEL | | | | | (Chi-squared) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Comp. | A.D. | C.D. | S.D. | Disp. | Comp. | A.D. | C.D. | S.D. | Disp. | |
| RACE—SEX | | | | | | 5.83 | | | | | 7.96* | |
| White male | 34.92 | 36.70 | + 1.78 | + 5.08 | 2.72 | + 0.65 | 40.90 | + 5.98 | + 17.13 | 2.63 | + 2.27* | |
| White female | 35.38 | 39.14 | + 3.76 | + 10.64 | 2.73 | + 1.38 | 34.84 | – 0.53 | – 1.51 | 2.64 | – 0.20 | |
| Non-white male | 13.39 | 9.23 | – 4.16 | – 31.08 # | 1.94 | – 2.14* | 9.23 | – 4.15 | – 31.03 # | 1.88 | – 2.21* | |
| Non-white female | 16.32 | 14.94 | – 1.38 | – 8.44 | 2.11 | – 0.65 | 15.02 | – 1.29 | – 7.98 | 2.04 | – 0.63 | |
| RACE | | | | | | | | | | | | |
| White | 70.30 | 75.88 | + 5.54 | + 7.88 | 2.61 | + 2.12* | 75.74 | + 5.45 | + 7.75 | 2.52 | + 2.16* | |
| Non-white | 29.70 | 24.17 | – 5.54 | – 18.64 | 2.61 | – 2.12* | 24.26 | – 5.45 | – 18.35 | 2.52 | – 2.16* | |
| SEX | | | | | | | | | | | | |
| Male | 48.31 | 45.94 | – 2.37 | – 4.91 | 2.85 | – 0.83 | 50.05 | + 1.75 | + 3.61 | 2.76 | + 0.63 | |
| Female | 51.69 | 54.06 | + 2.37 | + 4.59 | 2.85 | + 0.83 | 49.95 | – 1.75 | – 3.38 | 2.76 | – 0.63 | |

Comp. = Composition
A.D. = Absolute Disparity
C.D. = Comparative Disparity
S.D. = Standard Deviation
Disp. = Disparity in Standard Deviations

* = significant disparity (10% A.D., 20% C.D., 1.960 Disp. (1 in 20))
# = very significant disparity (15% A.D., 25% C.D., 2.576 Disp. (1 in 100))
For chi-squared statistic, DF=2; * indicates chi-squared = 5.991 (1 in 20);
# indicated chi-squared = 9.210 (1 in 100)

## APPENDIX "4"

EXHIBIT 7
COMPOSITION AND DISPARITIES -- PETIT JURY WHEELS

| Category | Census | - - - RETURNED QUESTIONNAIRES - - - | | | | | - - - - - QUALIFIED WHEEL - - - - - | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Comp. | A.D. | C.D. | S.D. | Disp. | Comp. | A.D. | C.D. | S.D. | Disp. | (Chi-squared) |
| **ATHENS DIVISION** | | | | | | | | | | | | |
| RACE–SEX | | | | | | 19.00 # | | | | | | 16.58 # |
| White male | 39.03 | 45.73 | + 6.70 | + 17.17 | 2.69 | + 2.49* | 47.47 | + 8.45 | + 21.64 | 2.45 | + 3.45 # | |
| White female | 40.08 | 42.99 | + 2.91 | + 7.26 | 2.71 | + 1.08 | 37.12 | − 2.96 | − 7.38 | 2.46 | − 1.20 | |
| Non-white male | 9.43 | 4.88 | − 4.55 | − 48.27 # | 1.61 | − 2.82 # | 5.05 | − 4.38 | − 46.44 # | 1.47 | − 2.98 # | |
| Non-white female | 11.46 | 6.40 | − 5.06 | − 44.14 # | 1.76 | − 2.88 # | 10.35 | − 1.11 | − 9.67 | 1.60 | − 0.69 | |
| RACE | | | | | | | | | | | | |
| White | 79.11 | 88.72 | + 9.61 | + 12.15 | 2.24 | + 4.28 # | 84.60 | + 5.49 | + 6.94 | 2.04 | + 2.69 # | |
| Non-white | 20.89 | 11.28 | − 9.61 | − 46.01 # | 2.24 | − 4.28 # | 15.40 | − 5.49 | − 26.27 # | 2.04 | − 2.69 # | |
| SEX | | | | | | | | | | | | |
| Male | 48.46 | 50.61 | + 2.15 | + 4.44 | 2.76 | + 0.78 | 52.39 | + 3.93 | + 8.12 | 2.51 | + 1.57 | |
| Female | 51.54 | 49.39 | − 2.15 | − 4.17 | 2.76 | − 0.78 | 47.61 | − 3.93 | − 7.63 | 2.51 | − 1.57 | |
| **MACON DIVISION** | | | | | | | | | | | | |
| RACE–SEX | | | | | | 5.30 | | | | | | 13.26 # |
| White male | 32.59 | 32.35 | − 0.24 | − 0.74 | 2.68 | − 0.09 | 41.91 | + 9.32 | + 28.60 # | 2.69 | + 3.46 # | |
| White female | 35.26 | 39.22 | + 3.96 | + 11.23 | 2.73 | + 1.45 | 31.68 | − 3.57 | − 10.14 | 2.74 | − 1.30 | |
| Non-white male | 14.41 | 10.13 | − 4.28 | − 29.68 # | 2.01 | − 2.13* | 10.23 | − 4.18 | − 28.98 # | 2.02 | − 2.07* | |
| Non-white female | 17.74 | 18.30 | + 0.56 | + 3.14 | 2.18 | + 0.26 | 16.17 | − 1.57 | − 8.86 | 2.19 | − 0.72 | |
| RACE | | | | | | | | | | | | |
| White | 67.85 | 71.57 | + 3.72 | + 5.48 | 2.67 | + 1.39 | 73.60 | + 5.75 | + 8.47 | 2.68 | + 2.14* | |
| Non-white | 32.15 | 28.43 | − 3.72 | − 11.57 | 2.67 | − 1.39 | 26.40 | − 5.75 | − 17.88 | 2.68 | − 2.14* | |
| SEX | | | | | | | | | | | | |
| Male | 47.00 | 42.67 | − 4.33 | − 9.21 | 2.85 | − 1.52 | 52.15 | + 5.15 | + 10.95 | 2.87 | + 1.79 | |
| Female | 53.00 | 57.33 | + 4.33 | + 8.17 | 2.85 | + 1.52 | 47.85 | − 5.15 | − 9.71 | 2.87 | − 1.79 | |

| Category | Census | RETURNED QUESTIONNAIRES | | | | | QUALIFIED WHEEL | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Comp. | A.D. | C.D. | S.D. | Disp. | Comp. | A.D. | C.D. | S.D. | Disp. | (Chi-squared) |
| **COLUMBUS DIVISION** | | | | | | | | | | | | |
| RACE–SEX | | | | | | 4.22 | | | | | 9.44 # | |
| White male | 38.85 | 38.74 | − 0.11 | − 0.27 | 2.80 | − 0.04 | 37.31 | − 1.54 | − 3.96 | 2.70 | − 0.57 | |
| White female | 32.93 | 35.43 | + 2.50 | + 7.61 | 2.70 | + 0.93 | 35.78 | + 2.85 | + 8.67 | 2.60 | + 1.10 | |
| Non-white male | 13.40 | 9.60 | − 3.79 | − 28.32 # | 1.96 | − 1.94 | 8.56 | − 4.83 | − 36.09 # | 1.88 | − 2.57 | |
| Non-white female | 14.83 | 16.23 | + 1.40 | + 9.42 | 2.05 | + 0.68 | 18.35 | + 3.52 | + 23.74* | 1.97 | + 1.79 | |
| RACE | | | | | | | | | | | | |
| White | 71.77 | 74.17 | + 2.40 | + 3.34 | 2.59 | + 0.93 | 73.09 | + 1.32 | + 1.83 | 2.49 | + 0.53 | |
| Non-white | 28.23 | 25.83 | − 2.40 | − 8.50 | 2.59 | − 0.93 | 26.91 | − 1.32 | − 4.66 | 2.49 | − 0.53 | |
| SEX | | | | | | | | | | | | |
| Male | 52.24 | 48.18 | − 4.06 | − 7.77 | 2.87 | − 1.41 | 45.73 | − 6.51 | − 12.47 | 2.76 | − 2.36* | |
| Female | 47.76 | 51.82 | + 4.06 | + 8.50 | 2.87 | + 1.41 | 54.27 | + 6.51 | + 13.64 | 2.76 | + 2.36* | |
| **AMERICUS DIVISION** | | | | | | | | | | | | |
| RACE–SEX | | | | | | 12.66 # | | | | | 31.93 # | |
| White male | 29.27 | 31.05 | + 1.78 | + 6.08 | 2.60 | + 0.68 | 41.07 | + 11.80* | + 40.33 # | 2.35 | + 5.02 # | |
| White female | 31.54 | 38.09 | + 7.35 | + 23.30* | 2.66 | + 2.77 # | 31.20 | − 0.34 | − 1.08 | 2.40 | − 0.14 | |
| Non-white male | 17.10 | 11.76 | − 5.33 | − 31.19 # | 2.15 | − 2.48* | 10.13 | − 6.97 | − 40.74 # | 1.94 | − 3.58 # | |
| Non-white female | 22.10 | 18.30 | − 3.80 | − 17.18 | 2.37 | − 1.60 | 17.60 | − 4.50 | − 20.35* | 2.14 | − 2.18* | |
| RACE | | | | | | | | | | | | |
| White | 60.80 | 69.93 | + 9.13 | + 15.01 | 2.79 | + 3.27 # | 72.27 | + 11.46* | + 18.85 | 2.52 | + 4.55 # | |
| Non-white | 39.20 | 30.07 | − 9.13 | − 23.29* | 2.79 | − 3.27 # | 27.73 | − 11.46* | − 29.24 # | 2.52 | − 4.55 # | |
| SEX | | | | | | | | | | | | |
| Male | 46.36 | 42.67 | − 3.69 | − 7.96 | 2.85 | − 1.30 | 51.20 | + 4.84 | + 10.43 | 2.58 | + 1.88 | |
| Female | 53.64 | 57.33 | + 3.69 | + 6.88 | 2.85 | + 1.30 | 48.80 | − 4.84 | − 9.02 | 2.58 | − 1.88 | |

| Category | Census | RETURNED QUESTIONNAIRES Comp. | A.D. | C.D. | S.D. | Disp. (Chi-squared) | QUALIFIED WHEEL Comp. | A.D. | C.D. | S.D. | Disp. (Chi-squared) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ALBANY DIVISION** | | | | | | | | | | | |
| RACE–SEX | | | | | | 3.49 | | | | | 5.51 |
| White male | 32.67 | 30.39 | – 2.28 | – 6.98 | 2.68 | – 0.85 | 38.46 | + 5.79 | +17.72 | 2.71 | + 2.13* |
| White female | 33.14 | 37.25 | + 4.11 | +12.41 | 2.69 | + 1.53 | 32.44 | – 0.70 | – 2.11 | 2.72 | – 0.26 |
| Non-white male | 14.99 | 12.42 | – 2.58 | –17.18 | 2.04 | – 1.26 | 13.38 | – 1.62 | –10.78 | 2.06 | – 0.78 |
| Non-white female | 19.19 | 19.93 | + 0.74 | + 3.87 | 2.25 | + 0.33 | 15.72 | – 3.47 | –18.10 | 2.28 | – 1.53 |
| RACE | | | | | | | | | | | |
| White | 65.81 | 67.65 | + 1.83 | + 2.79 | 2.71 | + 0.68 | 70.90 | + 5.09 | + 7.73 | 2.74 | + 1.86 |
| Non-white | 34.19 | 32.35 | – 1.83 | – 5.37 | 2.71 | – 0.68 | 29.10 | – 5.09 | –14.89 | 2.74 | – 1.86 |
| SEX | | | | | | | | | | | |
| Male | 47.67 | 43.00 | – 4.67 | – 9.80 | 2.85 | – 1.64 | 51.67 | + 4.00 | + 8.39 | 2.88 | + 1.39 |
| Female | 52.33 | 57.00 | + 4.67 | + 8.92 | 2.85 | + 1.64 | 48.33 | – 4.00 | – 7.64 | 2.88 | – 1.39 |
| **VALDOSTA DIVISION** | | | | | | | | | | | |
| RACE–SEX | | | | | | 8.13* | | | | | 3.78 |
| White male | 37.70 | 42.14 | + 4.44 | +11.77 | 2.80 | + 1.58 | 41.77 | + 4.07 | +10.79 | 2.73 | + 1.49 |
| White female | 39.02 | 41.47 | + 2.45 | + 6.28 | 2.74 | + 0.87 | 38.92 | – 0.10 | – 0.24 | 2.74 | – 0.03 |
| Non-white male | 10.64 | 7.36 | – 3.28 | –30.86 # | 1.78 | – 1.84 | 9.49 | – 1.15 | –10.79 | 1.73 | – 0.66 |
| Non-white female | 12.64 | 9.03 | – 3.61 | –28.54 # | 1.92 | – 1.88 | 9.81 | – 2.83 | –22.36* | 1.87 | – 1.51 |
| RACE | | | | | | | | | | | |
| White | 76.72 | 83.61 | + 6.89 | + 8.98 | 2.44 | + 2.82 # | 80.70 | + 3.97 | + 5.18 | 2.38 | + 1.67 |
| Non-white | 23.28 | 16.39 | – 6.89 | –29.60 # | 2.44 | – 2.82 # | 19.30 | – 3.97 | –17.07 | 2.38 | – 1.67 |
| SEX | | | | | | | | | | | |
| Male | 48.34 | 49.33 | + 0.99 | + 2.05 | 2.89 | + 0.34 | 51.10 | + 2.76 | + 5.71 | 2.81 | + 0.98 |
| Female | 51.66 | 50.67 | – 0.99 | – 1.91 | 2.89 | – 0.34 | 48.90 | – 2.76 | – 5.34 | 2.81 | – 0.98 |

892

| Category | Census | — — — RETURNED QUESTIONNAIRES — — — | | | | | — — — — QUALIFIED WHEEL — — — — | | | | | (Chi-squared) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Comp. | A.D. | C.D. | S.D. | Disp. | Comp. | A.D. | C.D. | S.D. | Disp. | |
| **THOMASVILLE DIVISION** | | | | | | | | | | | | |
| **RACE–SEX** | | | | | | 22.79 # | | | | | 20.28 # | |
| White male | 32.78 | 38.76 | + 5.98 | + 18.26 | 2.68 | + 2.23* | 40.91 | + 8.13 | + 24.81* | 2.67 | + 3.04 # | |
| White female | 35.84 | 42.35 | + 6.50 | + 18.15 | 2.74 | + 2.38* | 38.96 | + 3.12 | + 8.71 | 2.73 | + 1.14 # | |
| Non-white male | 13.86 | 7.17 | − 6.69 | − 48.29 # | 1.97 | − 3.39 # | 7.47 | − 6.39 | − 46.11 # | 1.97 | − 3.25 # | |
| Non-white female | 17.52 | 11.73 | − 5.80 | − 33.09 # | 2.17 | − 2.67 # | 12.66 | − 4.86 | − 27.74 # | 2.17 | − 2.24* | |
| **RACE** | | | | | | | | | | | | |
| White | 68.62 | 81.11 | + 12.49* | + 18.20 | 2.65 | + 4.72 # | 79.87 | + 11.25* | + 16.40 | 2.64 | + 4.26 # | |
| Non-white | 31.38 | 18.89 | − 12.49* | − 39.80 # | 2.65 | − 4.72 # | 31.38 | − 11.25* | − 35.85 # | 2.64 | − 4.26 # | |
| **SEX** | | | | | | | | | | | | |
| Male | 46.64 | 46.10 | − 0.53 | − 1.14 | 2.84 | − 0.19 | 48.38 | + 1.74 | + 3.73 | 2.84 | + 0.61 | |
| Female | 53.36 | 53.90 | + 0.53 | + 1.00 | 2.84 | + 0.19 | 51.62 | − 1.74 | − 3.26 | 2.84 | − 0.61 | |